# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

|  |  |
|---|---|
| BRIAN M.,[1] | Case No. 5:24-cv-02479-MAR |
| Plaintiff, | |
| v. | **MEMORANDUM DECISION AND ORDER REVERSING THE DECISION OF THE COMMISSIONER AND REMANDING FOR FURTHER ADMISTRATIVE PROCEDURES** |
| FRANK BISIGNANO, Commissioner of Social Security,[2] | |
| Defendant. | |

Plaintiff Brian M. ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying his application for Title II disability insurance benefits ("DIB"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). (ECF Docket Numbers ("Dkts.") 6, 18.)

---

[1] Plaintiff's name is partially redacted in accordance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] Frank Bisignano became Commissioner of Social Security on May 6, 2025. Under Federal Rule of Civil Procedure 25(d), he is automatically substituted as Defendant in this suit.

For the reasons stated below, the Commissioner's decision is REVERSED, and this action is REMANDED for further proceedings consistent with this Order.

## I.

## **PROCEDURAL HISTORY**

On September 3, 2020, Plaintiff filed his application alleging a disability onset beginning March 20, 2020.  (Administrative Record ("AR") 426-27.)  Plaintiff's claims were initially denied on December 21, 2020, and again upon reconsideration on February 16, 2021.  (AR 108-20, 122-35.)  On April 8, 2021, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  (AR 156.)

On March 11, 2024, Plaintiff, represented by a non-attorney representative, testified before an ALJ presiding in Moreno Valley, California.  (AR 63-90.)  A vocational expert ("VE") also testified.  (AR 91-101.)  On April 29, 2024, the ALJ issued a decision denying the application.  (AR 40-51.)  Plaintiff filed a request with the Agency's Appeals Council to review the ALJ's decision, which the Council denied on September 26, 2024.  (AR 1-7.)

On November 20, 2024, Plaintiff, represented by counsel, filed the instant action.  (Dkt. 1.)  This matter is before the Court on Plaintiff's Brief ("Pl.'s Brief"), filed on February 20, 2025, and Defendant's Brief ("Def.'s Brief"), filed on April 7, 2025.  (Dkts. 9, 12.)

## II.

## **PLAINTIFF'S BACKGROUND**

Plaintiff was forty-nine (49) years old on the alleged onset date and fifty-three (53) years old by the time of the administrative hearing.[3]  (AR 108, 122.)

---

[3] Plaintiff was considered a "younger person" on his alleged onset date.  *See Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1069 (9th Cir. 2010) (explaining that social security regulations define "younger persons" as "under age 50"); 20 C.F.R. § 416.963(c). By the time of the hearing, Plaintiff was considered a person "closely approaching advanced age" under Agency regulations.  *Lockwood*, 616 F.3d at 1069 (explaining that

2

Plaintiff previously worked as a dentist.  (AR 70-71, 91-92.)  He alleges disability based on the following impairments: (1) tremors from heart medication; and (2) a heart transplant.  (AR 109, 123, 141, 148.)

### III.

### STANDARD FOR EVALUATING DISABILITY

To qualify for benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve (12) months.  42 U.S.C. § 423 (d)(1)(a); *Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2)(A); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry.  *Ford v. Saul*, 950 F.3d 1141, 1148-49 (9th Cir. 2020); 20 C.F.R. §§ 404.1520; 416.920.  The steps are:

(1) Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2) Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.[4]

---

social security regulations define a "person closely approaching advanced age" as "age 50-54"); 20 C.F.R. § 416.963(d).

[4] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's R[esidual] F[unctional] C[apacity]," or ability to work after accounting for his verifiable impairments.  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222-23 (9th

(4) Is the claimant capable of performing work she has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

*See Tackett*, 180 F.3d at 1098-99; *see also* 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1); *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. *Ford*, 950 F.3d at 1148; *Bustamante*, 262 F.3d at 953-54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. *Id*. at 954. If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1); *Tackett*, 180 F.3d at 1098-99, 1100; *Reddick*, 157 F.3d at 721.

## IV.

## <u>THE ALJ'S DECISION</u>

**A.     Step One.**

At step one, the ALJ found that Plaintiff has not "engaged in substantial gainful activity since March 20, 2020, the alleged onset date." (AR 43.)

**B.     Step Two.**

At step two, the ALJ found Plaintiff has the following severe impairments: degenerative changes of the lumbar spine; right shoulder impingement syndrome; bilateral hand tremors secondary to tacrolimus medication; status-post heart

---

Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. *Robbins v. Soc. Sec. Admin*., 466 F.3d 880, 883 (9th Cir. 2006).

4

transplant (2015); asthma; chronic obstructive pulmonary disease (COPD); and migraines. (AR 43.)

**C.     Step Three.**

At step three, the ALJ found Plaintiff does not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1[.]" (AR 45.)

**D.     RFC Determination.**

The ALJ found Plaintiff had the RFC to perform light work[5] as defined in 20 C.F.R. Sections 404.1567(b), with the following limitations:

> lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk for six hours out of an eight-hour workday with regular breaks; sit for six hours out of an eight-hour workday with regular breaks; push and/or pull within the weight limits indicated for lifting and carrying; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; avoid concentrated exposure to pulmonary irritants such as odors, smoke, and fumes; avoid concentrated exposure to hazards such as moving machinery or unprotected heights; frequently reach overhead with the dominant right upper extremity; frequently handle, finger, and feel with the bilateral upper extremities; tolerate no

---

[5] "Light work" is defined as:

> [L]ifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, [a claimant] must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567, 416.967(b).

5

exposure to weather as is defined in the SCO[6]; and tolerate moderate levels of noise as is defined in the SCO.

(AR 46.)

**E.    Step Four.**

At step four, with the assistance of the VE's testimony, the ALJ found that Plaintiff was capable of performing his past relevant work as a dentist (DOT 072.101-010), as this work does not require the performance of work-related activities precluded by the claimant's RFC.  (AR 50.)  Accordingly, the ALJ concluded Plaintiff "has not been under a disability, as defined in the Social Security Act, from March 20, 2020, through the date of this decision."  (AR 51.)

## V.

## PLAINTIFF'S CLAIM

Plaintiff presents the following issue: whether the ALJ properly considered Plaintiff's subjective symptom complaints in accordance with the proper legal standards.  (Pl's Brief at 4-12; Def's Brief at 3-7.)

## VI.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits.  The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion.  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing *Robbins*, 466 F.3d at 882).  It is more than a scintilla but less than

---

[6] The *Selected Characteristics of Occupations* ("SCO") is a companion volume to the U.S. Department of Labor's Dictionary of Occupational Titles, Revised Fourth Edition, published in 1991.

a preponderance.  *Id.*  To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion."  *Reddick*, 157 F.3d at 720; *see also Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012) ("[A] reviewing court . . . may not affirm simply by isolating a 'specific quantum of supporting evidence.'" (quoting *Robbins*, 466 F.3d at 882)).  "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner.  *Reddick*, 157 F.3d at 720-21; *see also Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."), superseded by regulation on other grounds as stated in *Smith v. Kijakazi*, 14 F.4th 1108, 1111 (9th Cir. 2021).

The reviewing court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [s]he did not rely."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  If the ALJ erred, the error may only be considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination."  *Robbins*, 466 F.3d at 885 (citation omitted).

## VII.

## **DISCUSSION**

**A.**   **The ALJ Failed to Provide Sufficient Reasons for Discounting Plaintiff's Subjective Complaints.**

*1. Factual Background*

At the March 2024 administrative hearing, Plaintiff testified that he stopped working as a dentist in March 2020, after practicing for 15 years.  (AR 70-71.)  He lives at home with his wife and three kids.  (AR 71-72.)  He tries to assist with household activities but is often "unable to help" because of his current health.  (AR

72.)  He is unable to prepare meals for the kids but does occasionally drive them to soccer and chess matches "[i]f they're close to home," as he cannot drive on highways because of anxiety and poor vision in his right eye.  (AR 72-73, 78-79.)  Most weekends he stays at home, but he did recently attend a family wedding with 30 guests.  (AR 73-74.)

He testified that he has breathing issues and was recently diagnosed with COPD and emphysema.  (AR 77.)  He does not use any assistive devices to walk but must use a handrail when walking up the stairs due to his condition.  (AR 75.)  He also has cloudy vision in his right eye, which gives him blind spots and impairs his depth perception.  (AR 78.)  He received a heart transplant in 2015 and, as a result, is required to take medication that is "responsible for the vast part of [his] side effects and health issues."  (AR 79.)  He sees a pain management specialist for issues with his right shoulder, lower back, and left hip.  (AR 80-81.)  He also suffers from panic attacks and anger outbursts, for which he is receiving prescribed medication from a psychiatrist.  (AR 81-82.)  He experiences migraine headaches which can incapacitate him from one to three days depending on their severity.  (AR 83.)  He sees a neurologist, who has prescribed emergency medication (Ubrelvy), but the migraines continue to be "very spontaneous, unpredictable" and uncontrolled.  (AR 83-84.)

Plaintiff testified that he stopped working as a dentist because of tremors in his hands that made it unsafe to continue practicing.  (AR 85-86.)  The immunosuppressant drugs he was taking post-heart transplant surgery were causing "intense migraines" and body tremors.  (AR 84-85.)  The daily hand tremors grew more severe until, in March 2020, he began to fear causing harm to his patients.  (AR 85-86.)  His cardiologist lowered his dose of immunosuppressants as much as possible, but the hand tremors continued to worsen.  (AR 86.)  Besides the tremors, he has "altered sensation" of his fingertips that makes it extremely difficult to grasp things.  (AR 87.)  For example, he is unable to twist the cap off a water bottle.  (AR

8

87.) Because of his compromised grip strength, he cannot comfortably pick up a case of water bottles or a gallon of milk. (AR 88-89.) He experiences the hand tremors in both hands "all day long," which causes difficulty in showering and grooming. (AR 89-90.)

In her decision, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but his statements concerning the intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 47.) Specifically, the ALJ found that Plaintiff's subjective symptom allegations were inconsistent with (1) his reported daily activities, (2) the conservative and effective medical treatment he received, and (3) the objective medical evidence. (AR 43, 46-49.)

*2. Applicable law*

When a claimant produces objective medical evidence of an impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations and internal quotation marks omitted); *Garrison v. Colvin*, 759 F.3d 995, 1014-15 (9th Cir. 2014). "The ALJ must state specifically which symptom testimony is [discounted] and what facts in the record lead to that conclusion." *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996). "A finding that a claimant's testimony is not credible 'must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 34546 (9th Cir. 1991).

"If the ALJ's . . . finding is supported by substantial evidence, [a court] may

not engage in second-guessing." *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). However, an ALJ's failure to give specific, clear, and convincing reasons to reject the claimant's testimony regarding the severity of the symptoms is not harmless, because it precludes the Court from conducting a meaningful review of the ALJ's reasoning. *Brown-Hunter*, 806 F.3d at 489. Moreover, a court must "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Orn*, 495 F.3d at 630. Courts, therefore, may not speculate as to the basis for unexplained conclusions but, rather, must only consider the reasoning actually given by the ALJ. *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) ("We are constrained to review the reasons the ALJ asserts . . . [and] may not take a general finding . . . and comb the [AR] to find specific conflicts.") (citation omitted).

Finally, even if an ALJ errs in assessing subjective complaints, the decision will be affirmed where such error is harmless, that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." *Brown-Hunter*, 806 F.3d at 492 (citation omitted); *see also Smith*, 14 F.4th at 1111 (even where the "modest burden" of the substantial evidence standard is not met, "we will not reverse an ALJ's decision where the error was harmless"). In that regard, the ALJ's finding may be upheld even if not all the ALJ's reasons for rejecting the claimant's testimony are valid. *See Bray*, 554 F.3d at 1227; *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004).

*3. Discussion*

a. Daily Activities

Defendant argues that the ALJ rejected Plaintiff's subjective complaints because they were inconsistent with his activities of daily living. (Def.'s Brief at 6-7.) An ALJ may rely on a claimant's daily activities in discounting symptom testimony. *See Orn*, 495 F.3d at 639 (holding daily activities may be used to

discount subjective complaints where the daily activities "contradict [a claimant's] other testimony" or "meet the threshold for transferable work skills"); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Engaging in daily activities that are incompatible with the severity of symptoms alleged can support an adverse credibility determination.").

While the ALJ refers to Plaintiff's activities of daily living generally, it is not clear that the ALJ considered them as a reason to discount Plaintiff's testimony. The ALJ's first mention of Plaintiff's ability to drive and run errands, as well as attend his children's soccer and chess games and a relative's wedding, was in the context of determining the severity of his mental impairments at steps 2 and 3 of the sequential evaluation process.  (AR 44-45.)  Findings related to mental functioning are not the same as providing specific, clear and convincing reasons for discounting a plaintiff's subjective symptom testimony.  *See Eidson v. Comm'r of Soc. Sec.,* 2023 WL 5516327, at *9 (E.D. Cal. Aug. 25, 2023) (concluding ALJ's citation to activities of daily living in relation to the evaluation of the severity of mental impairment under the "paragraph B" criteria not a clear and convincing reason for discounting plaintiff's testimony); *Veronica S. v. Kijakazi*, 2022 WL 3648165, at *4 (C.D. Cal. Aug. 23, 2022) ("Many Courts have recognized that an ALJ's citations at step three are essentially findings relating to the listing determination . . . which is not the same inquiry as whether [p]laintiff's testimony is credible.").

Thereafter, the ALJ briefly summarized Plaintiff's testimony at the hearing, including listing Plaintiff's reported daily activities as a stay-at-home dad, without providing any substantive reasoning as to how those activities of daily living affected the ALJ's consideration of his subjective medical complaints.  (AR 46-47.) Finally, in determining that Plaintiff was not precluded from all work, the ALJ briefly noted that Plaintiff is able to walk without an assistive device, climb stairs with a handrail, and drive to run errands "about 3-4 times a week."  (AR 48.)

11

Notably absent, however, is any clear indication that the ALJ considered those activities as undermining Plaintiff's testimony about the severity of his work-precluding impairments. Ultimately, this Court may "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn*, 495 F.3d at 630.

In any case, even assuming the ALJ did intend to reject Plaintiff's subjective complaints because they were inconsistent with his activities of daily living, the ALJ's reasoning is insufficient. "Only if the level of activity [is] inconsistent with [c]laimant's claimed limitations" do daily "activities have any bearing on [c]laimant's credibility." *Reddick*, 157 F.3d at 722. "We have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." *Garrison*, 759 F.3d at 1016.

As Plaintiff argues, the ALJ made no reference to how any of Plaintiff's daily activities were inconsistent with his testimony that he was no longer capable of working as a dentist. (Pl's Brief at 11.) Plaintiff's ability to walk without an assistive device, climb stairs with a handrail, and drive to run errands during the week is not inconsistent with his testimony that he could no longer work due to the severity of hand tremors and migraine headaches that made it unsafe to continue his practice. *See Ferguson v. O'Malley*, 95 F.4th 1194, 1203 (9th Cir. 2024) ("Because there is no inconsistency between Ferguson's headache testimony and his daily activities, the ALJ's reference to that purported inconsistency is not a specific, clear, and convincing reason to discount Ferguson's headache testimony."); *see also Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("[T]he mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility

12

as to her overall disability."). Absent further explanation from the ALJ, any purported reliance on Plaintiff's activities of daily living does not constitute a specific, clear, and convincing reason for discounting his symptom testimony. *See, e.g., Dickinson v. Saul*, 2019 WL 3837652, at *9 (D. Idaho Aug. 13, 2019) (finding ALJ's conclusion that claimant could perform light work because she could handle a checkbook, cook, walk for exercise twice a week, and care for herself, was insufficient because ALJ did not explain how the activities, "which are not performed on a sustained basis," involved the same tasks required in a work setting).

### b. Conservative and Effective Medical Treatment

Defendant also argues that the ALJ rejected Plaintiff's subjective complaints because Plaintiff received only conservative treatment that effectively controlled his impairments. (Def.'s Brief at 5-6.) "[E]vidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment." *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007) (internal quotation marks omitted). However, "[a]ny evaluation of the aggressiveness of a treatment regimen must take into account the condition being treated." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017).

Plaintiff contends that the ALJ simply isolated portions of the record that showed conservative treatment while ignoring other evidence of more disabling complaints. (Pl.'s Brief at 9.) For the most part, the Court agrees. For example, the ALJ notes that Plaintiff had "relatively mild and conservative treatment" regarding his knee, hip, and back pain, consisting mostly of physical therapy and pain medication, "which is not indicative of disability-level impairments." (AR 43, 47.) Though Plaintiff testified that he saw a pain management specialist for back and hip issues, Plaintiff made no claim that these impairments prevented him from working as a dentist. (AR 80-81.) Rather, Plaintiff testified that, after his heart transplant in 2015, he was required to take medications that caused debilitating

13

migraine headaches and daily hand tremors that left him unable to safely work in his practice.  (AR 79, 83, 85-86.)  The ALJ, however, did not indicate that those impairments were treated conservatively.  In sum, the ALJ selectively cites evidence of pain management through conservative treatment that does not accurately reflect the medical record as a whole or address Plaintiff's testimony regarding the impairments that caused him to stop working as a dentist.  *See Ghanim*, 763 F.3d at 1164 ("[T]he treatment records must be viewed in light of the overall diagnostic record."); *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975) ("We cannot affirm the examiner's conclusion simply by isolating a specific quantum of supporting evidence.").

Additionally, an ALJ may reject the testimony of a claimant whose symptoms are fairly controlled with treatment.  *See Celaya v. Halter*, 332 F.3d 1177, 1181 (9th Cir. 2003) ("[T]he ALJ reasonably noted that the underlying complaints upon which her reports of pain were predicated had come under control."); *see also Warre v. Comm'r of Soc. Sec.*, 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").  Here, the ALJ noted that Plaintiff's hip and back pain was effectively controlled by epidural injections, which "provided 50% relief" allowing him "to walk more and participate in physical therapy."  (AR 47.)  Again, however, the ALJ failed to identify any medical improvement or effective control of Plaintiff's complaints of debilitating hand tremors.  The ALJ did indicate that Botox injections and medication decreased the severity of Plaintiff's migraine headaches.  (AR 49 ("Although there was some medication adjustment, in July 2023 and January 2024, notations indicated that the claimant's migraines had decreased.").)  However, an examination of the record undermines the claim that Plaintiff's migraine headaches were well controlled with medication.

Plaintiff received Botox injections in June, September, and December 2022

to treat his chronic migraines.  (AR 1736.)  In March 2023, Plaintiff told Dr. Olenski that the medication had been "effective," but he was still suffering from "1-3 migraines a month."  (AR 1736.)  Later that year, in December 2023, Plaintiff told Dr. Olenski that he had his last Botox injection in March 2023, that it "did not help much" in reducing his migraines, and that he was experiencing "consistent" migraines that lasted up to 4 days with fogginess, haze, fatigue, and sound sensitivity.  (AR 1730-31.)  Although, in January 2024, Dr. Dashtipour briefly noted that the frequency of Plaintiff's migraines had "decreased" due to Botox injections, he did not give any indication that the condition was under control and not disabling.  (AR 1793.)  Furthermore, it is not clear that Plaintiff was able to continue taking the medication, which Plaintiff indicated was "too pricey" under his insurance because of its "high deductible."  (AR 1730-31.)  Thus, the record does not credibly demonstrate that Plaintiff's migraines, even if reduced, were well controlled with medication as stated by the ALJ.  *See, e.g., Christine L. v. Saul*, 450 F.Supp.3d 1091, 1100 (D. Or. Mar. 31, 2020) ("Plaintiff's migraines were not effectively controlled, as they would have caused Plaintiff to miss work at least twice a month."); *Kelsi R. v. Berryhill*, 2019 WL 2028531, at *4 (D. Or. May 8, 2019) (finding "[p]laintiff's migraines were not effectively controlled by medication" where she "still needed to lie down for up to a day in order to recover"); *see also Medina v. Commissioner of Social Security*, 2021 WL 1212667, at *10 (E.D. Cal. Mar. 31, 2021) ("'Being managed'" is not  the same as "'under control'" or "'well-controlled'" with medication.").

In sum, this reason for discounting Plaintiff's subjective symptom testimony is not supported by substantial evidence.

### c. Objective Medical Evidence

An ALJ may consider whether a claimant's subjective symptoms are supported by objective medical evidence, and an ALJ may reject a claimant's subjective testimony if it is inconsistent with the objective medical evidence.  *See*

15

*Carmickle v. Comm'r, SSA*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."). Although an ALJ may consider lack of medical evidence when analyzing Plaintiff's subjective allegations, "lack of medical evidence cannot form the sole basis for discounting pain testimony." *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005); *see also* Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017) ("[W]e will not disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate the degree of impairment-related symptoms alleged by the individual.").

Even assuming the record supports the ALJ's reasoning regarding the lack of support from objective medical evidence, the other reasons the ALJ identified to discount Plaintiff's subjective symptom testimony were not supported by substantial evidence. Standing alone, a lack of objective medical evidence is a legally insufficient reason to discount a claimant's subjective symptom allegations. *See Robbins*, 466 F.3d at 883 (holding that where ALJ's other reason to reject the claimant's testimony was legally insufficient, the sole remaining reason premised on the absence of objective medical support could not justify an adverse credibility determination); *see also Bunnell*, 947 F.2d at 345 ("[A]n adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain.").

Accordingly, the Court finds that the ALJ's decision does not provide specific, clear, and convincing reasons for rejecting Plaintiff's subjective symptom allegations.

**B.     The ALJ's Error Was Not Harmless.**

A decision of the ALJ will not be reversed for errors that are harmless. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citing *Burch*, 400 F.3d at 679). However, a reviewing court cannot consider an error harmless

16

"unless it can confidently conclude that no reasonable ALJ . . . could have reached a different disability determination." *Id*. at 1056.  In other words, legal errors are harmless only if they are inconsequential to the non-disability decision.  *Id*. at 1055.

Here, the ALJ's decision that Plaintiff could work as a dentist and, therefore, was not disabled necessarily relied, at least in part, on the ALJ's rejection of Plaintiff's allegations regarding the limiting effect of his impairments.  Therefore, the Court cannot find the ALJ's improper analysis of Plaintiff's subjective complaints to be harmless error.  *See Brown-Hunter*, 806 F.3d at 492 (finding ALJ's failure adequately to specify reasons for discounting claimant testimony "will usually not be harmless").

**VIII.**

**<u>RELIEF</u>**

**A.    Applicable Law.**

"When an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'"  *Hill*, 698 F.3d at 1162 (citation omitted).  "We may exercise our discretion and direct an award of benefits 'where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed.'"  *Id*. (citation omitted).  "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated."  *Id*.; *see also Reddick*, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that Claimant is entitled to benefits.").

**B.    Analysis.**

Here, remand for further proceedings is warranted.  The ALJ's assessment of Plaintiff's subjective complaints about his symptoms and limitations, particularly

17

those related to his hand tremors and migraine headaches, is intertwined with the consideration of medical evidence and ultimately the fashioning of the RFC. Because it is unclear, considering these issues, whether Plaintiff is in fact disabled, remand here is on an "open record." *See Brown-Hunter*, 806 F.3d at 495.

## IX.

## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this action for further proceedings consistent with this Order. **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

DATED: March 3, 2026

MARGO A. ROCCONI
UNITED STATES MAGISTRATE JUDGE

18